BROWNE GEORGE ROSS LLP
Eric M. George (State Bar No. 166403)
egeorge@bgrfirm.com
Kim S. Zeldin (State Bar No. 135780)
kzeldin@bgrfirm.com
Eric A. Westlund (State Bar No. 293403)
ewestlund@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant
DANIEL "KEEMSTAR" KEEM, dba
DRAMAALERT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

NICKO "ROMEO" LACOSTE, dba THE CALIFORNIA DREAM TATTOO,

Plaintiff,

vs.

DANIEL "KEEMSTAR" KEEM, dba DRAMAALERT,

Defendant.

Case No. 2:20-CV-02323-RGK-JPR

Hon. R. Gary Klausner

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

Date:

Motion Was Taken Off The Motion Calendar And Taken Under Submission Per Docket Entry Number 31

Trial Date: None Set

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. THE CHALLENGED STATEMENTS WERE MADE IN A PUBLIC FORUM IN CONNECTION WITH AN ISSUE OF PUBLIC INTEREST ........ 2

A. Truthful Statements That An Adult Public Figure Engaged In Sexual Conduct With Minors Contribute To The Public Debate ........ 2

B. This Debate Is Significant Enough To Garner Public Interest ........ 4

C. Keem Did Not "Convert" Private Information About Romeo's "Sex Life" Into A Public Interest ........ 5

III. PLAINTIFF DID NOT MEET HIS BURDEN OF ESTABLISHING A PROBABILITY OF SUCCESS ON THE MERITS ........ 6

A. The First Amendment Bars Plaintiff's Claims ........ 6

1. Plaintiff's Conclusory Allegations Are Insufficient To Establish Malice ........ 7

2. The Challenged Statements Are Not Actionable False Statements Of Fact ........ 8

B. Apart From The First Amendment Bar On Plaintiff's Claims, The Complaint Fails To State Claims For Tortious Interference ........ 9

1. Tortious Interference With Prospective Economic Advantage ........ 9

2. Tortious Interference With Contract ........ 10

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Cummins v. Lollar*,
No. CV 11-8081-DMG, 2012 WL 12885117 (C.D. Cal. Nov. 16, 2012) ................8

*Google, Inc. v. Am. Blind & Wallpaper Factor, Inc.*,
No. C 03-05340 JF, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005) .........................10

*Heller v. NBCUniversal, Inc.*,
No. CV-15-09631-MWF-KS, 2016 WL 6573985 (C.D. Cal. Mar. 30, 2016)...........................................................................7

*Higher Balance, LLC. v. Quantum Future Grp., Inc.*,
No. CIV 08-233-HA, 2008 WL 5281487 (D. Or. Dec. 18, 2008) ............................8

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.*,
No. 16-cv-01702-BLF, 2018 WL 6439133 (N.D. Cal. Dec. 7, 2018) ......................7

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015) ..................................................................................9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) ..........................6

*Resolute Forest Products, Inc. v. Greenpeace International*,
302 F. Supp. 3d 1005 (N.D. Cal. 2017)...............................................................7, 8

*Todd v. Lovecruft*,
No. 19-cv-01751-DMR, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020) .........1, 3, 4, 5, 6

*United Artists Corp. v. United Artist Studios LLC*,
No. CV 19-828-MWF, 2019 WL 8221088 (C.D. Cal. Aug. 2, 2019) ....................10

*United States v. King*,
623 F. App'x 962 (11th Cir. 2015).........................................................................7

**STATE CASES**

*Grenier v. Taylor*,
234 Cal. App. 4th 471 (2015)...............................................................................5, 6

## TABLE OF AUTHORITIES

**(Continued)**

**Page(s)**

*Ojjeh v. Brown*,
43 Cal. App. 5th 1027 (2019)....................5

*Terry v. Davis Cmty. Church*,
131 Cal. App. 4th 1534 (2005)....................3, 5

*Weinberg v. Feisel*,
110 Cal. App. 4th 1122 (2003)....................5

*Wilson v. Cable News*,
7 Cal. 5th 871 (2019)....................3, 5

*Yang v. Tenet Healthcare Inc.*,
No. E071693, 2020 WL 2299450 (Cal. Ct. App. May 8, 2020)....................4

**STATE STATUTES**

California Code of Civil Procedure
§ 425.16....................5

**RULES**

Federal Rules of Civil Procedure
Rule 12....................7

Federal Rules of Evidence
Rule 408....................7

## I. INTRODUCTION[1]

We welcome Romeo's opposition filing. It places in high definition for the Court and counsel the very reasons why Romeo's suit runs afoul of California's anti-SLAPP law. From his very own briefing, we now know that ***Romeo himself*** does not dispute: that sexual molestation of minors and online adult predatory sexting with minors are matters of pressing public importance . . . that the girls' accusations against him are accurate . . . and that Romeo himself is a "public figure."

The meaning of Romeo's necessarily-made concessions is plain: Keem made truthful statements about Romeo that fall squarely within the ambit of constitutionally-protected speech, and that contribute to the public interest. This is so because, as held earlier this year by a federal district court for the Northern District of California, there is a public interest in:

> specifically identifying individuals believed to have committed [sexual] misconduct. . . . [Such discussions] contribute to the discussion surrounding sexual assault because they invite discussion on identifying, responding to, and preventing sexual abuse . . . Publicly accusing individuals of rape and sexual assault is unquestionably controversial, but the controversy itself serves to demonstrate that it is a matter of public interest and debate.

*Todd v. Lovecruft*, No. 19-cv-01751-DMR, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020).

Here, Keem's truthful airing of illegal, predatory sexual misconduct by Romeo against minors contributed to the public interest, perhaps literally protecting under aged women from becoming Romeo's next victims. As such, Romeo's attempt to

[1] Defendant files this Reply following the Court's Order dated June 12, 2020 reinstating Plaintiff's Opposition filed at Docket 22 (the Court previously struck the Opposition before the Reply was due). Dkt. 37.

squelch Keem's speech through retaliatory litigation constitutes a SLAPP suit that must be stricken, and for which Keem should be reimbursed his legal fees.

## II. THE CHALLENGED STATEMENTS WERE MADE IN A PUBLIC FORUM IN CONNECTION WITH AN ISSUE OF PUBLIC INTEREST

### A. Truthful Statements That An Adult Public Figure Engaged In Sexual Conduct With Minors Contribute To The Public Debate

The statements that are challenged here furthered a dialogue by several young girls who claimed that, as minors, Romeo (an adult) (a) had a sexual relationship with one of them; (b) engaged in predatory sexting on the internet with several of them; and (c) transmitted a pornographic video of his penis to one of the girls who is still a minor.

In an opposition filing that is as remarkable for what it does not say as for what it does:

- Romeo ***does not dispute*** that sexual molestation of minors and online adult predatory sexting with minors are matters of pressing public importance; and
- Romeo ***does not dispute*** the accuracy of any of the girls' allegations; and
- Romeo ***does not dispute*** that he is a "public figure," a "famous" tattooist, and a well-known social media influencer with a sizeable social media following.

Rather, in an ostensible linguistic effort to downplay his illegal acts, Romeo concedes that he has "sexual preferences and proclivities" that include engaging in sexual acts and online communications with minors. Dkt. 29 at 11:10-14. Then, conceding that minor girls have contacted him on the internet because of his fame (*see* Dkt. 12 at 16:4-6), Romeo purports to attribute his sexting with minors to his

inexperience with "fame." *Id.* at 16:1-3.[2] He also attempts to depict the challenged statements as simple disclosures of "private" information about his "sex life."

The foregoing facts establish that Keem's news report of the girls' accusations against Romeo "contribute[d] to the public debate." *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 150 (2019). The law is unambiguous on the point: there is a public interest in "specifically identifying individuals believed to have committed [sexual] misconduct." *Todd*, 2020 WL 60199, at *13. The girls' accusations against Romeo, which were the subject matter of the YouTube videos, "contribute[d] to the discussion surrounding sexual assault because they invite discussion on identifying, responding to, and preventing sexual abuse." *Id.* As *Todd* cogently observed: "***accusations of abuse on their own can serve the interests of the public at large***. . . . Publicly accusing individuals of rape and sexual assault is unquestionably controversial, but the controversy itself serves to demonstrate that it is a matter of public interest and debate." *Id. See also Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1546-51 (2005) (court found a public interest in specifically identifying individuals believed to have committed sexual misconduct with minors).[3]

This principle is embodied in the many cases concerning third party complaints about a service provider, which have "consistently been held to constitute protected

---

[2] Contrary to Romeo's argument (Dkt. 29 at 14:6-25), Keem does not contend that the challenged statements are in the public interest solely because of Romeo's position as a famous public figure. Even were Romeo a nonpublic figure, "calling out" an adult who engages in illegal acts with minors is part of the public debate around childhood sexual abuse. *See Todd*, 2020 WL 60199, at *12. Nevertheless, Romeo's fame is a factor that should be considered in determining whether the challenged statements were made in connection with an issue of public interest. *See Wilson v. Cable News*, 7 Cal. 5th 871, 902 (2019) (cited by Plaintiff) ("***[I]f*** Wilson were a figure in the public eye, that status could be a sufficient basis to conclude statements about him would be on a matter of public interest) (emphasis added).

[3] Romeo argues that *Terry* is distinguishable because unlike a pastor, Romeo is not legally allowed to interact with a minor when he performs his vocation. Dkt. 29 at 12:6-23. He concludes that therefore, "[w]hether a tattoo artist has a sexual interest in underage persons is not a matter of public interest." *Id.* at 12:21-22. Plaintiff's vocation is irrelevant. In *Todd*, the court held that a the sexual misconduct including rape by a developer of cryptocurrency and blockchain software was a matter of public interest. *Todd*, 2020 WL 60199, at *13-14.

activity under the anti-SLAPP statute." *Yang v. Tenet Healthcare Inc.*, No. E071693, 2020 WL 2299450, at *5 (Cal. Ct. App. May 8, 2020) (citing cases). Plaintiff argues that this line of cases is not applicable because the challenged statements here have "nothing to do with" Plaintiff's ability to operate his business. Dkt. 29 at 13:7-10. Romeo is wrong. Members of the tattoo community have "an interest in judging whether they should interact" with Romeo and the allegations of childhood molestation against him can "inform those decisions." *Todd*, 2020 WL 60199, at *13. For example, in *Todd*, the court found that the cryptography community had an interest in judging whether they should interact with defendant Todd, and "allegations of sexual abuse against Todd can inform those decisions." *Id*. Indeed, as the Complaint alleges, Romeo's customers care about whether or not he engages in inappropriate sexual relationships with minors and some have decided not to get tattoos from him ***because of*** the girls' allegations. Dkt. 1 at ¶¶ 22-27.[4]

In sum, the danger that minors will be lured into inappropriate internet sexual communications (including the transmission of pornography) by adults, and in particular by famous adults, is a matter of pressing public interest. *See, e.g.*, G. Forni et al., *Little red riding hood in the social forest. Online grooming as a public health issue: a narrative review* (2020) (analyzing the state of online grooming preventive strategies based on review of 42 scholarly articles published between January 2014 and March 2019).[5]

**B. <u>This Debate Is Significant Enough To Garner Public Interest</u>**

Romeo's extensive social media following of nearly 1 million subscribers to his YouTube channel and 1.8 million followers to his Instagram account (*see* Dkt. 12 at

---

[4] *See also* https://twitter.com/SmolBeanJohnson/status/1106750179632386049 (@smokbeanjohnson tweeted on March 15, 2019 (after the girls' tweets accusing Romeo but before Keem's first YouTube video aired): "And I was thinking about getting a tattoo by him, I'm reconsidering now").

[5] Article available at http://www.seu-roma.it/riviste/annali_igiene/open_access/articoli/32-03-10-Forni.pdf.

12:16-17) also demonstrates that the challenged statements were of concern to a substantial number of people rather than just to a "relatively small, specific audience." *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003). *See, e.g.*, *Grenier v. Taylor*, 234 Cal. App. 4th 471, 476-77, 483 (2015) (membership of the church, which ranged from 550 to 1,000, was large enough to qualify as a community for purposes of section 425.16); *Terry*, 131 Cal. App. at 1539 (significant public interest found where only about 100 people read the report at issue); *Todd*, 2020 WL 60199, at *14 (significant public interest where plaintiff's Twitter account had over 100,000 followers).

In the matter at hand, more than 1.5 million people viewed each YouTube video. Dkt. 12 at 23:17-18. Plaintiff's argument that, because Keem's purpose was to "sell news," the YouTube videos are "not protected by the anti-SLAPP statute" (Dkt. 29 at 11:24-25; 17:24-25)[6] lacks merit. Keem was not selling a typical commercial product – he is the seller of news that is itself subject to First Amendment protection. *See Ojjeh v. Brown*, 43 Cal. App. 5th 1027, 1036 (2019) ("reporting the news is protected speech activity").

### C. <u>Keem Did Not "Convert" Private Information About Romeo's "Sex Life" Into A Public Interest</u>

Romeo's argument that Keem "converted" "private information" about his "sex life" and "sexual proclivities" into a "public interest by discussing it on his YouTube news channel" (Dkt. 29 at 11:9-12) is not factually accurate or legally supported. First, Keem reported on his news channel about public allegations of childhood sexual abuse that had already been made by the victims on the internet. That information was already a matter of public interest ***before*** Keem issued his news report on his YouTube channel.

Second, Plaintiff's argument has been soundly rejected in an analogous context by *Grenier*, 234 Cal. App. 4th at 480-83. In *Grenier*, the plaintiffs were a church

[6] Plaintiff's allegations that Keem's purpose in airing the YouTube videos was to harm Plaintiff's business prospects is irrelevant to the first step of the anti-SLAPP analysis. *See Wilson*, 7 Cal. 5th at 887 (at the first step of analysis, the anti-SLAPP statute does not "require a defendant to disprove allegations of illicit motive").

pastor and his wife who brought a defamation case against the pastor's stepson and parishioner. *Id.* at 476-77. The defendants had posted multiple comments about the pastor on an internet forum and on the stepson's personal website. *Id*. at 477. In these postings, the defendants accused the pastor of childhood abuse against the stepson and claimed that the pastor was stealing money from the church. *Id.* The posts included comments stating that the pastor was "a bad guy and has gotten away with a lot of bad stuff in his life including drug dealing, drug smuggling, child abuse, alleged molestation . . . stealing money from the church, spiritual abuse and much other stuff," "a Liar and self-confessed Felony Child Abuse," and a "sick molesting evil man!" *Id*. at 477-48. On appeal, the plaintiffs argued (as Romeo does) that these statements were not made in connection with an issue of public interest because the situation was a "private family dispute that [the defendants] have attempted to make public by their own conduct." *Id*. at 481. The court disagreed, stating that the pastor's "character and fitness to serve as a pastor are of interest to the membership" of the church. *Id*. It noted that the defendants were "attempting to warn people away from attending the Church with Bob as the pastor," and information provided to aid decision-making by potentially affected parties is an issue of public concern. *Id*. The court concluded that "allegations of abuse by members of the clergy and the protection of children concern issues of public interest." *Id*.

## III. <u>PLAINTIFF DID NOT MEET HIS BURDEN OF ESTABLISHING A PROBABILITY OF SUCCESS ON THE MERITS</u>[7]

### A. <u>The First Amendment Bars Plaintiff's Claims</u>

Contrary to Plaintiff's assertion, whether challenged statements are opinions or

[7] Plaintiff incorrectly argues that it is Defendant's burden to prove Plaintiff has failed to state a claim. Dkt. 29 at 18:6-7. On an anti-SLAPP motion, after the moving defendant identifies "identif[ies] all allegations of protected activity and the claims for relief supported by them," "the burden shifts to the plaintiff to show a 'reasonable probability of prevailing in its claims.'" *Todd*, 2020 WL 60199, at *5 (citations omitted). Where, in this case, defendant alleges only legal insufficiency, the plaintiff's burden is to "show[] the sufficiency of the pleadings." *Planned*

false statements of fact, and whether malice is properly pleaded, can be resolved at a Rule 12 stage. *See, e.g.*, *Resolute Forest Products, Inc. v. Greenpeace International*, 302 F. Supp. 3d 1005, 1018-20 (N.D. Cal. 2017) (granting motion to dismiss and anti-SLAPP motion on grounds that (i) plaintiff failed to adequately plead actual malice and (ii) the statements were not actionable false statements of fact).

**1. Plaintiff's Conclusory Allegations Are Insufficient To Establish Malice**

It is undisputed based on the Complaint and matters that are subject to judicial notice that Plaintiff is a limited public figure.[8] *See, e.g.*, *Resolute Forest*, 302 F. Supp. 3d at 1017 ("[Plaintiff's] own allegations about their world-wide reach and influence, as well as the public nature of its work in forestry and sustainability, show that the company is a limited public figure for purposes of its participation in the forestry industry . . . ."); *Heller v. NBCUniversal, Inc.*, No. CV-15-09631-MWF-KS, 2016 WL 6573985, at *5 (C.D. Cal. Mar. 30, 2016) (finding a limited-purpose public figure where "Plaintiff's own allegations show that his relationship with N.W.A. was the subject of great public interest that prompted him to write a book recounting his side of the story").

Romeo argues that he sufficiently alleged actual malice by conclusorily alleging Keem "recklessly and maliciously continues to make such accusations." Dkt.

---

*Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).

[8] Romeo alleges this admission that he is a "public figure" in his cease and desist letter is protected under Federal Rule of Evidence 408 as an offer to compromise. Dkt. 29 at 15, n. 1. Plaintiff is wrong. First, cease and desist letters are not per se offers to compromise. *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF, 2018 WL 6439133, at *4 (N.D. Cal. Dec. 7, 2018) (motion to exclude denied because "[t]he Court finds this document is a cease and desist letter and thus not a settlement discussion as contemplated by FRE 408"). Second, even if it was an offer to compromise, Keem is not seeking to introduce it for a purpose proscribed by Rule 408, but rather to show that he is a public figure. *See United States v. King*, 623 F. App'x 962, 966 (11th Cir. 2015) (cited by Plaintiff) (court ***affirmed*** the admissibility of the cease and desist letter offered for a purpose outside of Rule 408's exclusionary rule).

29 at 21:13-14. This is nonsense. "To determine whether a plaintiff adequately pleads actual malice, the court must 'disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements, as '[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements' are insufficient to support a cause of action." *Resolute Forest*, 302 F. Supp. 3d at 1018 (citations omitted). There must be specific allegations of the speaker's mindset -- such as that the defendant provided no source for the allegedly defamatory statements, or that the source denies giving the information. *Id*. Plaintiff alleges none.

**2. <u>The Challenged Statements Are Not Actionable False Statements Of Fact</u>**

Neither the Complaint nor the Opposition alleges that that challenged statements were false. To the contrary, the Complaint admits that Romeo had a "sexually charged" sexting and video conversation with a minor girl. Dkt. 1 at ¶¶ 13-14. In his Opposition, Romeo does not dispute that, as an adult, he had sexual acts, conversations, and shared a video of his penis with minor girls. That is the definition of a pedophile. *See* dictionary.com ("an adult who is sexually attracted to young children").[9]

Romeo can hardly claim that Keem's statements that Romeo's "career is finished" and that "nobody wants to get a tattoo from this guy for obvious reasons" as a result of the girls' allegations are untrue. The Complaint alleges that the girls' sexual misconduct allegations against Romeo had an adverse effect on his tattoo business. Dkt. 1 at ¶¶ 22-27. In any event, Keem's opinions about the repercussions Romeo should suffer for his sexual misconduct (e.g., Romeo "belongs in a cage") were merely expressions of subjective judgments. *See Cummins v. Lollar*, No. CV

[9] In any event, Keem merely said that Romeo was "like a pedo" -- not that he was in fact a pedophile, which is an expression of an opinion, rather than a fact. *See, e.g., Higher Balance, LLC. v. Quantum Future Grp., Inc.*, No. CIV 08-233-HA, 2008 WL 5281487, at *10 (D. Or. Dec. 18, 2008) (statement that "[it's really starting to look like [the plaintiff's business] is merely . . . a front for pedophilia" is an opinion).

11-8081-DMG (MANx), 2012 WL 12885117, at *3 (C.D. Cal. Nov. 16, 2012) (internet posting stating plaintiff was a "cyberstalker who should be in jail for her crimes" was an opinion).

**B. Apart From The First Amendment Bar On Plaintiff's Claims, The Complaint Fails To State Claims For Tortious Interference**

**1. Tortious Interference With Prospective Economic Advantage**

Plaintiff failed to allege (1) facts showing that the Keem engaged in conduct that was wrongful "by some legal measure other than the fact of the interference itself" (*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 980 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015)); (2) the existence of an economic relationship with a specific third party; and (3) that Keem had knowledge and intent to interfere with that particular economic relationship. *See* Dkt. 1.

First, Plaintiff's Opposition only addressed the second and third elements, thereby conceding that he has not and cannot plead facts showing that Keem's conduct was independently wrongful. For this reason alone, Romeo failed to properly plead a cause of action for tortious interference with economic advantage.

Next, as to the second and third elements, Plaintiff claims Keem's statements interfered with his prospective economic advantage, as Keem stated: "after the story came out with [Romeo] trying to hook up with underage girls, . . . no one wants to get a tattoo from Romeo for obvious reasons." Dkt. 29 at 22:21-24. This alleged "admission," Romeo argues, without citation to any law, obviates the requirement to plead the existence of an economic relationship with a specific third party. This, too, is nonsense. Keem did not "admit" that there was (or that he knew about before he published the YouTube videos) any existing "specific third party" business relationship containing the "probability of future economic benefit" to Romeo.[10]

[10] Romeo also ignores that in the March 17, 2019, YouTube video he denied that he lost any clients as a result of the girls' allegations. Romeo responded to Keem's comments that the girls' allegations had resulted in a loss of business with a man

Keem's vague references to unspecified potential future tattoo clients, like the complaint's allegations, amount to nothing more than "a mere hope for an economic relationship with a desired future benefit," which is inadequate to state a claim for interference with prospective economic advantage. *Google, Inc. v. Am. Blind & Wallpaper Factor, Inc.*, No. C 03-05340 JF, 2005 WL 832398, at *8 (N.D. Cal. Mar. 30, 2005).

**2. Tortious Interference With Contract**

Equally defective are Romeo's vague and non-specific allegations that "Defendant was aware of and had knowledge of Plaintiff's contractual relationships with promoters, agencies, social media platforms, operating on local, national and international stages," and intended to disrupt those relationships. Dkt. 29 at 23:13-18. Plaintiff fails to identify, as he must, a specific contract, the terms of that contract, and how defendant would have known of that particular contract. *See United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAx), 2019 WL 8221088, at *5 (C.D. Cal. Aug. 2, 2019) (dismissing a claim for intentional interference with contractual relations because the complaint "fail[ed] to identify any terms of the alleged contracts, the terms of the contracts that were specifically breached, or how [Cross-Defendant] would have known about those contracts").

DATED: June 12, 2020 BROWNE GEORGE ROSS LLP

By: */Kim S. Zeldin*
Kim S. Zeldin
Attorneys for Defendant DANIEL "KEEMSTAR" KEEM, dba DRAMAALERT

---

named James Charles as follows: "Actually the collaboration with James had been down for a long time and that has to do with his brother wanting to get tattooed and it was not up to code with health regulations and there was just like permits and stuff that were not there. The video has been down for months. The video has nothing to do with this situation at all." Dkt. 14-2 at 9.